**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL ACTION** |
| **VERSUS** | **No. 23-34** |
| **ALPHONSE BAZILE** | |
| **RAYSHAUD GREEN** | **SECTION I** |

<u>**ORDER & REASONS**</u>

Before the Court are the objections and the responses to the respective presentence investigation reports[1] ("PSR") for defendant Alphonse Bazile ("Bazile") and defendant Rayshaud Green ("Green") (collectively, "defendants"). Since the objections to the PSRs largely overlap, the Court will address the disputes together.

For the reasons set forth, the Court overrules each of the defendants' objections. Further, the Court sustains the government's objection with respect to the Bazile PSR and grants the government's request in its response to Green's objections.

## I.   BACKGROUND

Prior to addressing the sentencing disputes, the Court briefly reviews the facts of the offenses. According to the factual bases[2], on August 17, 2022, a fight between juveniles occurred in the street in front of Bazile's residence.[3] The fight ended, and the juveniles dispersed.[4] Approximately 30 minutes later, Bazile and Green were talking to a tow-truck driver when a group of juveniles arrived in a vehicle.[5] One of

---

[1] R. Doc. No. 154 ("Bazile PSR"); R. Doc. No. 168 ("Green PSR").
[2] R. Doc. No. 133 ("Bazile Factual Basis"); R. Doc. No. 140 ("Green Factual Basis").
[3] Bazile Factual Basis, at 2; Green Factual Basis, at 1.
[4] Bazile Factual Basis, at 2; Green Factual Basis, at 2.
[5] Bazile Factual Basis, at 2; Green Factual Basis, at 2.

the juveniles later told police they returned to finish the fight from earlier.[6] A few juveniles exited the car with firearms.[7] They approached Bazile and Green, and Bazile told the juveniles to leave.[8]

Bazile walked back into his home followed by Green, at which point the juveniles dispersed.[9] Bazile and Green then armed themselves with firearms.[10] Green's firearm was able to fire automatically.[11] Armed, Green and Bazile met in Bazile's backyard.[12] Bazile and Green then went back into the house, exited the front door,[13] and Bazile walked to the street.[14] They both then discharged their firearms.[15] Approximately 38 seconds passed since the time defendants entered the home to discharging their weapons.[16]

The PSRs state that Bazile and Green "discharge[ed] their firearms towards the juveniles," resulting in the death of one of them.[17] Ballistics analysis later revealed that Bazile's weapon caused the death of the juvenile.[18] In an interview with a law enforcement officer, Bazile "admitted to firing the guns at the juveniles."[19] An

---

[6] Bazile Factual Basis, at 2; Green Factual Basis, at 2.
[7] Bazile Factual Basis, at 2; Green Factual Basis, at 2.
[8] Bazile Factual Basis, at 2; Green Factual Basis, at 2.
[9] Bazile Factual Basis, at 3; Green Factual Basis, at 3.
[10] Bazile Factual Basis, at 3; Green Factual Basis, at 3.
[11] Green Factual Basis, at 3.
[12] Bazile Factual Basis, at 3; Green Factual Basis, at 3.
[13] Bazile Factual Basis, at 4; Green Factual Basis, at 4.
[14] Bazile Factual Basis, at 4.
[15] Bazile Factual Basis, at 4; Green Factual Basis, at 4.
[16] Bazile Factual Basis, at 4; Green Factual Basis, at 4.
[17] Bazile PSR, ¶ 23; Green PSR ¶ 23.
[18] Bazile PSR, ¶ 23; Green PSR ¶ 23.
[19] Bazile PSR, ¶ 23.

adult with the juveniles told law enforcement officers that Bazile told them to leave, and he "began walking back to the car when [Bazile] began shooting at them."[20]

The Court now turns to the present disputes over sentencing. On February 7, 2024, Bazile appeared before this Court and pleaded guilty to count one of the superseding indictment[21], being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8).[22] The Court accepted Bazile's plea of guilty and adjudicated him guilty.[23] Several months later, on May 29, 2024, Green pleaded guilty to counts two and three of the superseding indictment, which charged him with being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8) and with possessing a machinegun in violation of 18 U.S.C. §§ 922(o), 924(a)(2).[24]

Pursuant to Federal Rule of Criminal Procedure 32, the U.S. Probation Office ("Probation") filed draft PSRs[25] for each defendant. In both PSRs, Probation applied a cross-reference to voluntary manslaughter, which raised the base level offense number to 29.[26] Both Bazile[27] and Green[28] filed objections to the PSRs. Bazile objected specifically to the PSR's calculation of his criminal history score[29], which he

---

[20] Bazile PSR, ¶ 24; Green PSR ¶ 24.
[21] R. Doc. No. 101.
[22] R. Doc. No. 112.
[23] R. Doc. No. 110.
[24] R. Doc. Nos. 138–139.
[25] R. Doc. Nos. 132 & 149. Since the final PSRs, apart from the addenda, are identical to the draft PSRs, all citations to a PSR is to the final PSR.
[26] Bazile PSR, ¶ 29; Green PSR, ¶ 32.
[27] R. Doc. No. 145.
[28] R. Doc. No. 163.
[29] R. Doc. No. 145, at 3–4.

3

now concedes is correct.[30]  Green raised six objections to the draft PSR, including a factual objection, and objections to suggestions in the PSR that Green should contribute to the cost of ordered programs and treatment.[31]

Both Bazile and Green objected to the cross-reference to voluntary manslaughter. They contend that they acted in self-defense and therefore did not commit a homicide.[32] With respect to Bazile, the government opposed[33] his objections as well as submitted its own objection[34], in which it asserts that a cross-reference to murder is more appropriate.[35] Bazile also filed a response to the government's objections.[36] With respect to Green, the government filed a response[37] to his objections, in which it also argued that a cross-reference to murder is more appropriate.[38]  However, it did not make a separate objection to the cross-reference to voluntary manslaughter.

Probation then filed the final PSRs[39], which include an addendum addressing the objections. With respect to the dispute over the cross-reference, the addenda did agree with defendants that the elements of self-defense were met but applied another provision that also cross-referenced to voluntary manslaughter.[40] The PSR also

---

[30] R. Doc. No. 181, at 2.
[31] R. Doc. No. 163.
[32] R. Doc. No. 145, at 1–3; R. Doc. No. 163-1, at 1–2.
[33] R. Doc. No. 155.
[34] R. Doc. No. 146.
[35] *Id.* at 11–12.
[36] R. Doc. No. 156.
[37] R. Doc. No. 165.
[38] *Id.* at 16–18.
[39] R. Doc No. 154 ("Bazile PSR"); R. Doc. No. 168 ("Green PSR").
[40] Bazile PSR, at 26–27; Green PSR, at 27–28.

maintained that voluntary manslaughter is the appropriate cross-reference.[41] Ultimately, the guidelines calculations in the final PSRs did not change from those in the draft PSRs for either defendant. [42]

## II.    DEFENDANTS' OBJECTION TO THE CROSS-REFERENCE

Section 2K2.1(c) of the U.S. Sentencing Guidelines provides that "[i]f the defendant used or possessed any firearm or ammunition cited in the offense of conviction in connection with the commission or attempted commission of another offense" and death resulted, courts are instructed to apply "the most analogous offense guideline from Chapter Two, Part A, Subpart 1 (Homicide), if the resulting offense level is greater than that determined" by the otherwise applicable base offense level in accordance with § 2K2.1. The PSRs as to each defendant applied these cross-references and found that voluntary manslaughter is the most analogous offense.[43]

Both defendants object to the cross-reference to voluntary manslaughter (or to any homicide) on the ground that they were acting in self-defense and that they did not commit a homicide.[44] Before addressing defendants' self-defense argument, the Court first disposes of Green's assertion that the cross-reference is inapplicable with respect to Green alone because ballistic analysis determined that Bazile's weapon

---

[41] Bazile PSR, at 25; Green PSR, at 26.
[42] Bazile PSR, at 28; Green PSR, at 28.
[43] Bazile PSR, ¶ 29; Green PSR, ¶ 32.
[44] R. Doc. No. 145, at 1–3; R. Doc. No. 163-1, at 1–2.

caused the death of the juvenile.[45] In other words, Green contends that a cross-reference to homicide is improper for lack of causation.[46]

The Court disagrees. Pursuant to § 1B1.3 of the sentencing guidelines, "cross references in Chapter Two . . . shall be determined on the basis of . . . all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant."[47] As used in § 1B1.3, "[a]iding and abetting means simply that the defendant[] assisted a criminal venture while sharing the requisite criminal intent, and took some affirmative action to make the venture succeed." *United States v. Anderson*, 174 F.3d 515, 523 (5th Cir. 1999). Because Green assisted Bazile and affirmatively fired toward the victim, Green can be held responsible for shots fired by Bazile regardless of whose bullet caused the victim's death, so long as he has the required criminal intent.

Defendants' arguments regarding self-defense are equally meritless. "It is true, as a general proposition, that self-defense and the related defense of another are affirmative defenses to both murder and voluntary manslaughter." *United States v. Branch*, 91 F.3d 699, 714 (5th Cir. 1996). "The initial burden of production rests on the defendant asserting self-defense, but once the defendant has met that burden, the government must then provide proof to 'negate' it." *United States v. Santiago*, 96

---

[45] R. Doc. No. 163-1, at 1.

[46] *Id.*

[47] U.S.S.G. § 1B1.1(a)(1)(A). Relevant conduct must be proven by a preponderance of the evidence for purposes of sentencing. *United States v. Barfield*, 941 F.3d 757, 762 (5th Cir. 2019).

F.4th 834, 849–50 (5th Cir. 2024). To meet the initial burden of production, a defendant must show evidence that

- (1) he was under an unlawful and present, imminent, and impending threat of such a nature as to induce a well-grounded apprehension of death or serious bodily injury;
- (2) he had not recklessly or negligently placed himself in a situation in which it was probable that he would be forced to choose the criminal conduct;
- (3) he had no reasonable, legal alternative to violating the law, a chance both to refuse to do the criminal act and also to avoid the threatened harm; and
- (4) a direct causal relationship may be reasonably anticipated between the criminal action taken and the avoidance of the threatened harm.

*Id.* at 850.[48]

Bazile and Green claim the facts in the factual bases and PSRs lead to a conclusion that the victim in this case provoked their actions and that this is a case of self-defense.[49] Bazile claims that he satisfies his initial burden and emphasizes the facts that he was at his own home, he had no legal alternative because armed men were approaching his home, and that discharging his weapon was the only way to

---

[48] The government cites *United States v. Penn*, 969 F.3d 450 (5th Cir. 2020) to argue that a different, but similar, five-part test applies to determine whether a claim of self defense is proper for a felon in possession. R. Doc. No. 146, at 12; R. Doc. No. 165, at 13. However, in that case, the Fifth Circuit applied the referenced five-part test to a claim of justification as a defense to a charge of being a felon in possession of a firearm. *Penn*, 969 F.3d at 455. The case did not involve a claim of self-defense to a homicide charge or cross reference as in this case. Indeed, because Bazile and Green admit guilt as to the felon in possession charge, the Court concludes that the test for justification in *Penn* is inapplicable here, and the four-part test from *United States v. Santiago*, 96 F.4th 834, 849–50 (5th Cir. 2024), which is cited above, applies. Nevertheless, because the elements of the justification defense overlap significantly with the elements of self-defense, the Court considers the government's relevant arguments accordingly.

[49] R. Doc. No. 145, at 1–3; R. Doc. No. 163-1, at 1–2.

protect himself and his family.[50] Green states in his objections that the "attackers drew their weapons and pointed at Mr. Bazile, at which point he fired his weapon" and that Green did so in self-defense and in defense of the other residents of the home.[51]

On the other side, the government contends that the facts and the video footage of the incident demonstrate that this incident was not a case of self-defense.[52] The government points out the footage showing that Green and Bazile were able to safely walk into the residence when the juveniles arrived, that they did not run, and that they fully closed the door behind them when they entered the residence.[53] It also points to footage of the vehicle in which the juveniles arrived departing the scene after Bazile and Green entered the residence and states that the two juveniles who were not in the car began walking away from the scene.[54] According to the video, the government argues, no one approached the residence after Bazile and Green entered.[55]

From this, the government argues that there was no imminent threat that would induce a well-grounded apprehension of death or serious bodily injury because Green and Bazile were able to safely walk into the residence and shut the door and that no individuals approached the residence thereafter.[56] At any point after that,

---

[50] R. Doc. No. 145, at 2.
[51] R. Doc. No. 163-1, at 1–2.
[52] R. Doc. No. 146, at 12–16; R. Doc. No. 165, at 13–16.
[53] R. Doc. No. 146, at 4, 14; R. Doc. No. 165, at 4, 14.
[54] R. Doc. No. 146, at 4; R. Doc. No. 165, at 4–5.
[55] R. Doc. No. 146, at 13; R. Doc. No. 165, at 14.
[56] R. Doc. No. 146, at 13; R. Doc. No. 165, at 14.

the government states that Bazile and Green negligently or recklessly put themselves in harm by returning outside with firearms.[57] The government also argues that there was a reasonable alternative to shooting the juveniles because there was a potential escape route through the backyard.[58] It further states that there was no direct causal relationship between the criminal actions taken and the avoidance of harm because the vehicle had already left and the juveniles not in the car had already walked away, with the victim over a hundred yards from the residence.[59]

The Court concludes that the government's evidence has negated the evidence put forward by Bazile and Green. There is no evidence that Green, Bazile, or any residents inside the house were under an imminent threat of danger of death or serious bodily injury. Green and Bazile were able to enter the residence and close the door behind them, and there is no evidence that anyone approached the residence thereafter. Rather, video evidence demonstrates that the individuals from the vehicle were in the process of leaving the area when Green and Bazile discharged their weapons. Bazile and Green also had reasonable alternatives to stay in the residence and call the police.

### III.   GOVERNMENT'S REQUESTS TO APPLY THE CROSS-REFERENCE TO SECOND-DEGREE MURDER

Having determined that defendants' assertions of self-defense fail and therefore do not preclude cross-references to homicide, the Court now must determine

---

[57] R. Doc. No. 146, at 13; R. Doc. No. 165, at 14.
[58] R. Doc. No. 146, at 13; R. Doc. No. 165, at 14.
[59] R. Doc. No. 146, at 13; R. Doc. No. 165, at 14.

whether the appropriate cross-reference is to voluntary manslaughter or murder. The PSRs applied a cross-reference to voluntary manslaughter.[60] The government contends that either first- or second-degree murder is the appropriate cross-reference.[61] The Court finds that second-degree murder is the appropriate cross-reference.

In applying the cross-reference provisions of U.S.S.G. § 2K2.1(c), this Court is "required to determine what federal homicide offense was most analogous" to the conduct that it finds defendant committed. *United States v. Hicks*, 389 F.3d 514, 530 (5th Cir. 2004). This Court "may draw reasonable inferences from the evidence presented." *United States v. Escobedo-Moreno*, 781 F. App'x 312, 315 (5th Cir. 2019). "The Government has the burden to prove the facts supporting a sentencing enhancement by a preponderance of the evidence." *Id.* However, a federal court may not impose a sentence in excess of the statutory maximum based on facts found by a preponderance of evidence. *Hicks*, 389 F.3d at 530.

Federal law defines murder as the "the unlawful killing of a human being with malice aforethought." 18 U.S.C. § 1111(a). First-degree murder is any murder

> perpetrated by poison, lying in wait, or any other kind of willful, deliberate, malicious, and premeditated killing; or committed in the perpetration of, or attempt to perpetrate, any arson, escape, murder, kidnapping, treason, espionage, sabotage, aggravated sexual abuse or sexual abuse, child abuse, burglary, or robbery; or perpetrated as part of a pattern or practice of assault or torture against a child or children; or perpetrated from a premeditated design unlawfully and maliciously to effect the death of any human being other than him who is killed.

---

[60] Bazile PSR, ¶ 29 ; Green PSR, ¶ 32.
[61] R. Doc. No. 146, at 1; R. Doc. No 165, at 16–18.

*Id.* Second-degree murder is "any other murder." *Id.* Malice distinguishes murder from manslaughter. *Frascarelli v. United States Parole Comm'n*, 857 F.3d 701, 706 (5th Cir. 2017). Accordingly, manslaughter is defined by the United States Code as "the unlawful killing of a human being without malice." 18 U.S.C. § 1112(a). Voluntary manslaughter is committed "[u]pon a sudden quarrel or heat of passion." *Id.*

The Court agrees with the government[62] that defendants' actions demonstrated malice. "'Malice is a term of art that encompasses three mental states: (1) intent to kill; (2) intent to do serious bodily injury; and (3) the existence of a depraved heart, another term of art that refers to a level of extreme recklessness and wanton disregard for human life." *Frascarelli*, 857 F.3d at 705–06 (internal quotations and citations omitted); *see also United States v. Browner*, 889 F.2d 549, 551–52 (5th Cir. 1989).

The Court finds that, at the very least, defendants demonstrated an extreme level of recklessness and wanton disregard for human life when they discharged their firearms at the juveniles.[63] The Fifth Circuit has found that intentionally firing a weapon in someone's direction constitutes extreme recklessness. *See Hicks*, 389 F.3d at 530 (upholding the district court's application of the second-degree murder

---

[62] R. Doc. No. 146, at 11–12; R. Doc. No. 165, at 18.

[63] Further, it can be argued that Bazile's intent to kill the juveniles can be soundly inferred from his admission that he was aiming at them. *Cf. United States v. James*, 575 F. App'x 588, 596–97 (6th Cir. 2014) (upholding district court's application of the guideline for attempted second degree murder on the ground that defendant shot in the direction of the victim).

guideline rather than the manslaughter guideline and finding that "[b]y intentionally firing his gun at Officer Lamance's police cruiser, which Hicks likely knew to be occupied because it had just been driven up to the field, Hicks displayed the requisite extreme recklessness and disregard for human life that constitutes malice under federal law sufficient for a finding of second-degree murder"); *United States v. Ramirez*, 93 F. App'x 636, 637–38 (5th Cir. 2004) (upholding the district court's application of the second-degree murder guideline and stating that "[i]n the absence of evidence that Ramirez believed that his life was in danger or that he was threatened with serious bodily harm by the approaching Prado, Ramirez's decision to shoot Prado exhibited extreme recklessness and wanton disregard for human life sufficient to display malice aforethought"). It is uncontested that Bazile and Green discharged their firearms "towards the juveniles."[64] Bazile himself "admitted to firing the guns *at* the juveniles" in an interview with law enforcement officers.[65]

Having found that defendants possessed the requisite malice to sustain a cross-reference to murder, the Court now finds that the appropriate cross-reference is to second-degree murder. The Court does not find that the murder was perpetrated in any of the required manners for first-degree murder. *See* 18 U.S.C. § 1111(a).

The Court recognizes that its finding of malice does not necessarily render second-degree murder the appropriate cross-reference. If Bazile or Green committed the offense "[u]pon a sudden quarrel or heat of passion," § 1112(a), then "[t]he malice

---

[64] Bazile PSR, ¶23; Geen PSR, ¶ 23.
[65] Bazile PSR, ¶23 (emphasis added).

that would otherwise attach [would be] negated," and voluntary manslaughter would be the appropriate cross-reference. *Browner*, 889 F.2d at 552; *see Lizama v. U.S. Parole Comm'n*, 245 F.3d 503, 506 (5th Cir. 2001) ("A defendant who kills in a heat of passion in response to adequate provocation is guilty only of voluntary manslaughter."). The heat of passion[66] is "a passion of fear or rage in which the defendant loses his normal self-control as a result of circumstances that would provoke such a passion in an ordinary person, but which did not justify the use of deadly force." *Browner*, 889 F.2d at 552. "Even if th[ere] was adequate provocation, voluntary manslaughter also requires that there be no cooling-off period between the provocation and the killing." *United States v. Burns*, No. 18-10083, 2023 WL 7876414, at *1 (9th Cir. Nov. 16, 2023), *cert. denied*, 144 S. Ct. 1081 (2024); *accord United States v. Collins*, 690 F.2d 431, 437 (5th Cir. 1982) (finding that voluntary manslaughter instruction was inappropriate because the defendant had "ample time for his blood to cool and for reflection"). Although the government does not use the phrase "cool off" in its submissions, the government essentially contends that the defendants had sufficient time to cool off.[67]

---

[66] The Fifth Circuit has recognized that "the heat of passion" is not distinct from "a sudden quarrel." *See United States v. McRae*, 593 F.2d 700, 705 (5th Cir. 1979) ("In the first place, it may be doubted whether the two aspects of voluntary manslaughter under 18 U.S.C. [§] 1112 are so discrete as appellant would have it. . . . In its literal, nonhistorical meaning, it is surely not the quarrel that signifies but the heat of passion that it occasions."). For this reason, this order will only use the phrase "the heat of passion."

[67] R. Doc. No. 146, at 12 ("Bazile walked the entire length of his yard before shooting and killing the juvenile who was departing at the time"). It should be noted that the government's submission is terse and does not address each element. But it does also argue that Bazile was not actually provoked. *See id.* at 11–12. Since the Court finds

The Court agrees with the government that defendants had sufficient time to cool off. An illuminating case in this regard is *Frascarelli v. United States Parole Commission*, in which the Fifth Circuit found that a defendant had sufficient time to cool off when, during a fight with his girlfriend, he "descend[ed] the stairs from her room on the second floor, t[ook] a hammer from a toolbox, climb[ed] back up the stairs, and hit her in the face with the hammer." 857 F.3d 701, 703 (5th Cir. 2017). The Fifth Circuit reasoned that "the fact that [the defendant] walked down and up a flight of stairs to obtain the hammer . . . is evidence that the heat of passion had time to 'cool.'" *Id.* at 708.

The Court finds that defendants had sufficient time to cool off and therefore acted maliciously. Just like the defendant in *Frascarelli*, Bazile and Green walked away from the altercation to retrieve a weapon and return. Though their stepping away was momentary, the Court notes that their stepping away is more pronounced than that in *Frascarelli*. Defendants did not just go from one room to another in the same house. They walked across the front lawn, walked into the house, then to the backyard, convened in the backyard, and then walked back through the house and once again across front lawn. In effect, Bazile and Green had "separated" from the group of juveniles and thus had ample opportunity "to escape the provocative situation and reflect on their course of action." *United States v. Walters*, 775 F. App'x

---

that defendants had sufficient time to cool off, it does not reach the question of actual provocation. With respect to Green, the government emphasizes that Green went inside, retrieved his gun, went to the backyard, before walking back through the house and shooting. *See* R. Doc. No. 165, at 17.

25, 28 (2d Cir. 2019) (affirming the district court's finding that the defendant committed murder rather than manslaughter).

In conclusion, the Court finds that defendants acted with malice and that their malice was not negated by the "heat of passion." Accordingly, the government's request to apply the cross-reference to second-degree murder is sustained.

## IV.   GREEN'S OBJECTION TO FINANCIAL OBLIGATIONS

Having resolved the disputes that concern the guideline calculations, the Court addresses Green's final objections. Paragraph 121 of the Green PSR imposes a condition that Green will participate in an approved outpatient treatment program for drug and/or alcohol abuse and states that "the defendant shall contribute to the cost of this program to the extent that the defendant is deemed capable by the United States Probation Officer."  Paragraph 122 imposes a condition that Green submit to a mental health evaluation and participate in an approved outpatient treatment program if treatment is recommended.  The paragraph further states that "[t]he defendant will contribute to the costs of services rendered (co-payment) based on ability to pay or availability of third-party payment." Green objects to each of these paragraphs and the financial obligations therein because he states that he "will be indigent upon release and responsible for one dependent child."[68]  The government does not address these objections in its response.

---

[68] R. Doc. No. 163-1, at 3.

However, the PSR does not impose an obligation to pay if probation determines that Green is indigent and unable to contribute. The Court therefore denies objections 5 and 6.

## V.    CONCLUSION

The cross-reference provision of U.S.S.G. § 2K2.1(c)(1)(B) applies because "death resulted" from defendants' conduct. The appropriate cross-reference is to second-degree murder, the base offense level of which is 38 pursuant to § 2A1.2. As agreed by the parties, both defendants will receive a three-point reduction for acceptance of responsibility[69], which results in a base offense level of 35.

Given Bazile's criminal history category of II, Bazile's guideline range is 188 to 235 months. However, pursuant to 18 U.S.C. 924(a)(8), the statutory maximum for his offense is 180 months.

Given Green's criminal history category of III, Green's guideline range is 210 to 262 months. However, the statutory maximum for Green's conviction as to count 2 of the superseding indictment is 180 months. And the statutory maximum possible sentence for Green's conviction as to count 3 of the superseding indictment is 120 months.

Since the Court will sentence defendants pursuant to § 2A1.2 for the second-degree murder base offense level, the Court need not address the government's requests in the alternative for an upward variance in both cases.

---

[69] R. Doc. No. 154, ¶ 7.

New Orleans, Louisiana, September 18, 2024.

_____
**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**